IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE PIERRE DESERNE | : | CIVIL ACTION |
| | : | NO. 10-03694 |
| v. | : | |
| | : | |
| MADLYN AND LEONARD | : | |
| ABRAMSON CENTER FOR | : | |
| JEWISH LIFE, INC. | : | |
| | : | |

O'NEILL, J. May 17, 2012

**MEMORANDUM**

Now before me is a motion for summary judgment filed by defendant Madlyn and Leonard Abramson Center for Jewish Life, Inc. For the reasons that follow, I will grant defendant's motion.

**BACKGROUND**

Plaintiff Marie Pierre Deserne claims that defendant, her former employer, discriminated against her. Counts III and IV of plaintiff's complaint alleging claims based on disability discrimination are all that remain in this action. I previously dismissed plaintiff's race-based discrimination claims.[1] In Count III, plaintiff asserts a claim under the Pennsylvania Human Relations Act, 43 P.S. § 3951, et seq. She asserts that her "protected class is disability – facial disfigurement being Black and ethnically, a West African National from the Country of Haiti and

[1] Although I dismissed plaintiff's race-based discrimination claims, her response to defendant's motion for summary judgment appears to raise issues of race-based discrimination. See, e.g. Dkt. No. 32 at 13 (asserting claims of discrimination and wrongful termination based upon her "race and ethnic Haitian heritage of African descent"); id. at 17 (arguing that "plaintiff has plead [sic] both race discrimination and hostile work environment under Title VII and PHRA"). Those arguments are without merit.

Plaintiff was subjected to intentional discrimination solely because of her facial disfigurement – disability." Compl. ¶ 54. In Count IV, she asserts a claim under Title VII of the Civil Rights Act of 1964. She alleges that her "protected class is disability – facial disfigurement and Plaintiff was subjected to intentional discrimination solely because of her facial disfigurement – disability." Compl. ¶ 69.

Plaintiff claims that she was disabled because she developed a skin condition identified as "exogenous ochronisis" in or about 2006. Compl. ¶ 10. Two of her treating physicians were deposed. One, Dr. Christina Chung, testified that plaintiff had a condition identified as exogenous ochronosis. Def's Ex. 4 at 45:1-46:1; Def.'s Ex. 4b. The other, Dr. Toby Shaw, testified that plaintiff had a condition known as seborrheic dermatitis with Litchenfield plaques. Def.'s Ex. 5 at 11:13-12:23. Regardless of her diagnosis, each of plaintiff's treating physicians concluded that "[h]er skin condition does not preclude her from participating in any work or activity," Def.'s Ex. 4 at 21:20-22; Def's Ex. 4a at 1, and that she was not "physically limited" as a result of her condition. Def.'s Ex. 5 at 14:16-17. Indeed, plaintiff acknowledges that her skin condition "does not preclude [her] from physically participating in any work or activity, whatsoever." Compl. ¶ 10. She has admitted that she could perform the essential functions of her job. Compl. ¶ 16; Def.'s Ex. 4 at 21-23; Def's Ex. 7 at 33:16-21. At her deposition, plaintiff conceded that the only impact of her skin condition was that she was itchy. Def's Ex. 7 at 33:24-34:15.

Defendant hired plaintiff in 2002 as a Certified Nursing Assistant.[2] Compl. ¶ 7. Her job

[2] The parties have also referred to the title for this position as Registered Nursing Assistant or Resident Care Associate.

duties included assisting nursing home residents with personal care; rendering assistance with bathing, personal hygiene, dressing, feeding and recreational activities; interacting with and observing assigned residents; and reporting notable changes regarding the residents. Compl. ¶ 13, Def's Ex. 2 at 1-2.

In April 2009, plaintiff was told that her job performance was "not good." Def.'s Ex. 7 at 64:11-24, 6613-14. In June 2009, a number of residents who were under plaintiff's care asked that she not be their Certified Nursing Assistant. Def.'s Ex. 10 at DEF0292. At the time, defendant noted that "[w]e cannot continue to re-arrange assignments because residents refuse to allow Marie to care for them." Id. According to defendant's discipline report for plaintiff, residents complained "regarding [plaintiff's] poor communication skills and/or poor care." Def.'s Ex. 10 at DEF0292. Plaintiff testified that the residents did not complain that she was not doing her job, but complained about her face; that her "face is ugly." Pl.'s Ex. 3 at 40:5-13. Millie Steur, one of plaintiff's supervisors, testified, however, that "[t]here was no discussion from Marie at any time with [Steur] about any resident or any family harassing her or complaining about her face." Def.'s Ex. 11 at 22:20-23.

Defendant took steps to respond to concerns about plaintiff's performance. The June 2009 discipline report noted that plaintiff had "already received one-on-one coaching twice with educator and trainer. Received 2 videos and one self study on communication. Completed one month performance improvement plan with supervisor. Referred to ESL classes." Id. Despite this training, in July 2009, a floor nurse working with the residents to whom plaintiff was assigned wrote a note to her supervisor complaining that plaintiff "continues to tell [a resident] to move her legs and we both know that [the resident] has [multiple sclerosis] and cannot move her

legs. I have to continually re-educate Marie on [the resident's] disease process and that she is unable to move her legs on her own but she insists on telling [the resident] to move her legs on the footrest of the lift." Def.'s Ex. 13.

Plaintiff was terminated in July 2009. Compl. ¶ 24. When asked why she was terminated, plaintiff responded that defendant said she was being fired because a resident complained that her face was "ugly." Def.'s Ex. 7 at 88:15-89:8. Plaintiff testified that she was told she was "going to be fired because the residents complain for me my face is ugly" [sic] and because a resident had complained that the resident had "lost a purse." Pl.'s Ex. 3 at 96:15-17; see also ; Pl.'s Ex. 3 at 117:4-7, 123:15-16. Defendant contends that it "terminated plaintiff for cause, based on poor performance," Dkt. No. 17, 16th Affirmative Defense, and that she "was not qualified to perform the essential duties of her job, or more accurately, she was not receptive to opportunities provided to help her to improve her performance." Dkt. No. 31-2 at 21.

**STANDARD OF REVIEW**

The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor

Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**DISCUSSION**

**I. Count III**

In count III of her complaint, plaintiff claims that defendant "violated Section 5(a) of the Pennsylvania Human Relations Act[,] 43 P.S. 951-53," Compl. ¶ 61, because she "was subjected to intentional discrimination solely because of her facial disfigurement – disability." Compl. ¶ 53. Claims for disability discrimination under the PHRA are generally interpreted in accord with claims brought under parallel provisions in the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996), citing Harrisburg

Sch. Dist. v. Pa. Human Relations Comm'n, 466 A.2d 760, 763 (Pa. Commw. Ct. 1983). When a plaintiff claims that she was treated differently based on her disability under the ADA or the PHRA courts apply the three-step, burden shifting analysis set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). See Gourley v. Home Depot, No. 99-5728, 2001 WL 755102, at *2 (E.D. Pa. June 29, 2001) ("Plaintiff relies on the McDonnell Douglas burden-shifting framework, applicable to claims for disability discrimination under the ADA and PHRA.").

Plaintiff first bears the burden of making a prima facie case of discrimination and must show that "(1) [s]he is a disabled person within the meaning of the [PHRA]; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he suffered an otherwise adverse employment decision as a result of discrimination." Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). The PHRA defines a disability as (i) "a physical or mental impairment which substantially limits one or more of such person's major life activities"; (ii) "a record of having such an impairment"; or (iii) "being regarded as having such an impairment." 43 P.S. § 954 (p.1).[3] Defendant contends that plaintiff's claim cannot withstand its motion for summary judgment because plaintiff has not set forth sufficient facts to establish that she is a disabled person within the meaning of the PHRA. I agree.

---

[3] The ADA Amendments Act of 2008, which went into effect on January 1, 2009 and prior to plaintiff's termination, "made it easier for plaintiffs to prove that they are 'disabled' within the meaning of the ADA." Estate of Murray v. UHS of Fairmount, Inc., No. 10-2561, 2011 WL 5449364, at *5 (E.D. Pa. Nov. 10, 2011). Plaintiff's claim, however, is brought under the PHRA and not under the ADA. To date, Pennsylvania has not made parallel amendments to the PHRA or the regulations implementing the PHRA.

**1. Substantially Limiting Physical Impairment**

Plaintiff has not set forth sufficient evidence to show that her skin condition constitutes an impairment that substantially limits a major life activity. Nor has she set forth evidence of a record of having such an impairment. A physical impairment is defined as "a physiological disorder or condition, cosmetic disfigurement . . . affecting . . . body systems [including] skin." 16 Pa. Code § 44.4. "'Major life activities' means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Id. To determine whether a plaintiff is "substantially limited" in performing a major life activity, courts consider: "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Namako v. Acme Mkts., Inc., No. 08–3255, 2010 WL 891144, at *4 (E.D. Pa. Mar. 11, 2010).

Plaintiff has not identified a single life activity that has been limited by her skin condition. She has admitted that her skin condition does not limit her ability to perform the essential functions of her job. Compl. ¶¶ 10, 16; Def.'s Ex. 4 at 21-23; Def.'s Ex. 7 at 33:16-21. Instead, at her deposition plaintiff claimed that the only impact of her skin condition was that she was "itchy." Def.'s Ex. 7 at 33:24-34:15. The record evidence would not allow for a reasonable jury to conclude that plaintiff has a physical impairment which substantially limits one or more of her major life activities. Cf. Kennedy v. Glen Mills Sch., Inc., No. 10-7450, 2011 WL 5552865, at *4 (E.D. Pa. Nov. 15, 2011) (granting summary judgment where there was no record evidence from which a reasonable factfinder could conclude that any of the plaintiff's major life activities had been affected by his claimed disability).

**2. Regarded As Disabled**

In response to defendant's motion for summary judgment, plaintiff contends that she is a disabled person because defendant regarded her as disabled. Plaintiff's complaint does not clearly assert a "regarded-as" disabled claim, alleging only that "defendant knew about plaintiff's facial disfigurement impairment disability because it is apparent."[4] Compl. ¶ 14. To the extent that this allegation can be construed as having raised a claim that defendant regarded her as disabled, I find that plaintiff has not made a sufficient factual showing to establish such a claim.

To show that defendant regarded her as disabled under the regulations implementing the PHRA, plaintiff must show that she

> has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer or owner, operator or provider of a public accommodation as constituting a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward the impairment; or has none of the impairments defined in subparagraph (i)(A) but is treated by an employer or owner, operator or provider of a public accommodation as having an impairment.

16 Pa. Code. § 44.4.[5] Defendant was aware that certain residents made complaints about

---

[4] "A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) (citations and internal quotation omitted); see also DeCastro v. Lahood, No. 04-2129, 2009 WL 1067030, at *8 (E.D.N.Y. Apr. 21, 2009) (finding that the defendant "did not have an opportunity to fashion discovery toward defense of" the plaintiff's regarded as claim which was raised for the first time in opposition to summary judgment).

[5] Following the ADAAA, the regulations implementing the ADA were revised. As revised, a plaintiff bringing a "regarded-as" claim of disability discrimination under the ADA need only demonstrate that she was subjected to an adverse action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Plaintiff points to this standard in her response in opposition to defendant's motion. Dkt. No. 32 at 36. Plaintiff's claim, however, is

plaintiff's face. But even if plaintiff's evidence establishes that defendant had knowledge of her skin condition, this alone is insufficient to establish that defendant regarded her as disabled under the definition set forth in the regulations implementing the PHRA. Cf. Davis v. Davis Auto, Inc., No. 10-3105, 2011 WL 5902220, at *9 (E.D. Pa. Nov. 22, 2011) (applying the parallel standard set forth in the pre-ADAAA regulations implementing the ADA to find that the defendants' knowledge of plaintiff's health conditions without more was "not enough to suggest that any of the Defendants perceived Plaintiff as incapable of or substantially limited in performing her job because of her health"). "Plaintiff has not provided any evidence that her employers perceived her as unable to work in general, or in performing a large range of jobs" and thus has not raised a question of material fact as to whether defendant regarded her as disabled. Davis, 2011 WL 590550, at *9.

Because plaintiff has not set forth sufficient facts to establish that she is a disabled person within the meaning of the PHRA, I will grant defendant's motion for summary judgment with respect to count III of plaintiff's complaint.

**II. Count IV**

In count IV of her complaint, plaintiff claims that defendant "violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000, et seq.," compl. ¶ 75, because she "was subjected to intentional discrimination solely because of her facial disfigurement – disability." Id. ¶ 69. "Title VII, of course, creates a cause of action for discrimination based on an individual's 'race, color, religion, sex or national origin.' Disability is not among the enumerated

---

brought under the PHRA and its unamended implementing regulations and I need not decide whether plaintiff can meet the more lenient standard set forth in the ADA regulations.

bases for a Title VII suit, and therefore a claim for disability discrimination brought under Title VII cannot survive." Diep v. Southwark Metal Mfg. Co., No. 00-6136, 2001 WL 283146, at *2 (E.D. Pa. March 19, 2001); see also Warner v. Montgomery Twp., No. 01-3309, 2002 WL 1623774, at *7 (E.D. Pa. July 22, 2002) (same).

An appropriate Order follows.